KUSKIN, J.T.C.
In this local property tax matter, defendant, in the context of a motion under N.J.S.A. 54:4-34 (commonly known as Chapter 91), contends that R. 8:7(e) is invalid, and, even if valid, is inapplicable to an appeal which was pending as of the rule’s September 1,1998 effective date. Rule 8:7(e) provides as follows:
Motions pursuant to N.J.S.A. 54-4-34. Except in the case of a false or fraudulent account, all motions to dismiss for refusal or failure to comply with N.J.S.A. 54:4-34 shall be filed no later than the earlier of (1) 180 days after the filing of the complaint, or (2) 30 days before the trial date.
N.J.S.A. 54:4-34 permits a tax assessor to request, in writing, information from the owner of income-producing property and provides that “[n]o appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request .... ” The statute also contains requirements as to the form of the request, and directs that the request be mailed to the property owner by certified mail.
On August 14, 1997, the tax assessor for the City of Passaic mailed to plaintiff, by certified mail, a request for information pursuant to N.J.S.A. 54:4-34. The form of the request complied with the statutory requirements. Plaintiff received the request on August 18, 1997, but did not respond. On April 1, 1998, plaintiff filed this appeal challenging the 1998 tax assessment on its property in the City. On April 13, 1998, defendant filed a counterclaim. On September 8, 1998, the Tax Court Management *106 Office .issued a Case Management Notice scheduling the matter for trial on February 16,1999.
Under the preceding facts, the applicable time limit for filing.a motion under R. 8:7(e) was 180 days after the filing of the complaint, or September 28, 1998. Defendant filed its motion seeking dismissal or other relief under Chapter 91 on January 7, 1999. In opposing the motion, plaintiff concedes that the assessor’s request for information satisfied the requirements of Chapter 91 as to form and mailing and that plaintiff failed to respond, but plaintiff asserts that the motion must be denied because of noncompliance with the time limit established by R. 8:7(e). In response, defendant, as set .forth above, challenges the validity and applicability of the rule. Consequently, in order to decide defendant’s motion, I must address the following issues: (a) did the Supreme Court have authority to adopt R. 8:7(e); (b) if the rule is valid, does it apply retrospectively to cases pending as of its effective date; and (c) if the rule is valid and applies retrospectively, should its provisions be relaxed under R. 1:1-2 with respect to the pending motion. I will discuss these issues in order.
I.
Validity of the Rule.
The guiding principle with respect to the New Jersey Supreme Court’s rule-making power was set forth in Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950). There the Court analyzed N.J. Constitution art. VI, § 2, ¶ 3 which authorized the Court to “make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts.” The focus of the opinion was the meaning of the phrase “subject to law,” which Supreme ’Court interpreted as follows:
The only interpretation of “subject to law” that will not defeat the objective of the people to establish an integrated judicial system and which will at the same time give rational significance to the phrase is to construe it as the equivalent of substantive law as distinguished from pleading and practice____Substantive law includes much more than legislation, it comprehends also the rights and duties which have come down to us through the common law. The phrase “subject to law" in Article VI, Section II, paragraph 3 of the Constitution thus serves as a *107 continuous reminder that the rule-making power as to practice and procedure must not invade the field of the substantive law as such. While the courts necessarily make new substantive law through the decision of specific cases coming before them, they are not to make substantive law wholesale through the exercise of the rule-making power.
[Winberry v. Salisbury, supra, 5 N.J. at 247-48, 74 A.2d 406]
The Court concluded that “the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure and administration as such.” Id. at 255, 74 A.2d 406.
The Supreme Court discussed the difficulty of separating “substance” from “procedure” in Busik v. Levine, 63 N.J. 351, 307 A.2d 571 (1973), in the context of a challenge to the validity of then Rule 4:42-11(b), which authorized pre-judgment interest in tort actions. The basis for the challenge was that the rule was a rule of substantive law, beyond the constitutional rule-making power of the Supreme Court. In construing the rule as a valid rule of procedure, the Court commented: “[I]t is simplistic to assume that all law is divided neatly between ‘substance’ and ‘procedure.’ A rule of procedure may have an impact upon the substantive result and be no less a rule of procedure on that account.” Id. at 364, 307 A.2d 571. The Court then discussed the shifting line between substance and procedure in three different contexts— conflict of laws, retrospective application of statutes, and lawmaking and, in the context of rule-making, identified the following concerns:
The Court may be spurred by the needs of the judicial system measured, not only by the private interests of all litigants, but also by the interest of the public. Or the Court, mindful of the problem of exclusivity and its impact upon the delicate relations among the co-equal branches of government, may be reluctant to move or to go as far as it would if the Legislature retained the power to disagree.
[Id. at 366, 307 A.2d 571.]
Citing the statute of limitations as an example, the Court noted that, for conflict of laws purposes, the statute is generally regarded as procedural but might be regarded differently in the context of rule-making.
We need but say that thus far it has not been suggested that this subject matter is “procedural” within the meaning of our constitutional provision. On the other *108 hand, time for appeal, which much resembles a statute of limitation, may confidently be said to come within the Court’s rale-making' power.
[Id. at 367, 307 A.2d 571 (citation omitted).]
The Supreme Court addressed the substance — procedure issue again in State v. Leonardis, 73 N.J. 360, 375 A.2d 607 (1977). There the Court held that the Pretrial Intervention Program, instituted pursuant to Court Rule, was a valid exercise of the Court’s rule-making por - s and stated that “an absolute prohibition against rules which merely affect substantive rights or liabilities, however slight such effect may be, would seriously cripple the authority and concomitant responsibility which have been given to the Court by the Constitution.” Id. at 374, 375 A.2d 607. In support of this proposition the Court cited Fehrenbach v. Fehrenbach, 42 Wis.2d 410, 167 N.W.2d 218 (1969), where the Wisconsin Supreme Court sustained the validity of a court rule requiring that a summons and complaint be filed with the court clerk within one year after service.
[The rule] regulates the practice and procedure in judicial proceedings and attempts to improve the efficient administration of justice by providing a penalty if actions and suits are not filed in the clerk’s office within one year after service.
In this case, the application of the rule has a collateral effect of giving the defendant a defense of barring the cause of action. However, this does not make the rule one of substantive law.... Most procedural rules may have some collateral substantive effect but do not become substantive in nature because of such indirect effect.
[Id. at 219-20.]
Defendant argues as follows hi support of its position that R. 8:7(e) is an invalid rule of substance. Chapter 91 expressly provides that “no appeal shall be heard” regardless of when a motion is filed bringing to the court’s attention the failure of a property owner to respond to an assessor’s request for information. Under the rule, however, an appeal could be heard, even though the taxpayer failed to respond to the assessor’s request, simply because the municipality failed to file its Chapter 91 motion within the time period set forth in the rule. The rule, therefore, in effect confers jurisdiction on the Tax Court under circumstances where the Legislature intended to preclude jurisdiction. *109 Defendant also argues that Chapter 91 relates to the Tax Court’s subject-matter jurisdiction, that objection to such jurisdiction may be made at any time, and, therefore, R. 8:7(e) imposes an invalid time limit on such an objection.
Under the Supreme Court decisions discussed above, a rule of procedure may have a substantive effect without being transformed thereby into a rule of substance. Rule 8:7(e) is such a rule of procedure. The rule has a substantive effect in that it may permit the Tax Court to hear appeals which, in the absence of the rule, would be dismissed or limited in scope as a result of a Chapter 91 motion. This incidental effect does not, however, make R. 8:7(e) a rule of substance because: (a) the rule does not in any respect conflict with or undermine the mandate of the Legislature that “no appeal shall be heard” if a response to a Chapter 91 request is not received within forty-five days, and (b) the rule does not in any way defeat or impair the purpose of Chapter 91 “to assist the assessor, in the first instance, to make the assessment and thereby hopefully to avoid unnecessary expense, time and effort in litigation.” Terrace View Gardens v. Dover Tp., 5 N.J.Tax 469, 471-72 (Tax 1982) affd o.b. per curiam, 5 N.J.Tax 475 (App.Div.1983), Rule 8:7(e) simply imposes on the municipality time limitations for enforcing the statute. If the municipality acts within the designated time period, the legal impact of Chapter 91 is exactly that contemplated by the Legislature. Furthermore, a property owner who fails to respond to a Chapter 91 request has no way of knowing whether the municipality will file its motion within the rule’s time limit. The motivation of the property owner to “assist the assessor” by responding within forty-five days, therefore, is the same with or without the rule.
Rule 8:7(e) is similar to the rule at issue in Winberry v. Salisbury, supra, 5 N.J. at 248, 74 A.2d 406, which imposed a time limit of forty-five days from the date of entry of judgment in the trial court for filing appeals to the Appellate Division. An existing statute permitted an appeal to be filed for a period of one year after the date of entry of the trial court judgment. The Supreme *110 Court sustained the validity of the rule as one of procedure. The effect of R. 8:7(e) can be distinguished from the effect of the forty-five day time limit for appeal on the basis that a forty-five day time limit deprives the court of jurisdiction if an appeal is not filed within the time period, whereas R. 8:7(e) confers jurisdiction upon the court if the motion is not filed within the rule’s time limit. For purposes of separating “substance” from “procedure,” this distinction is meaningless. A forty-five day time limit for appeal is no more or less a rule of procedure than R. 8:7(e).
In Busik v. Levine, supra, 63 N.J. 351, 307 A.2d 571, the Supreme Court recognized that:
[W]hile serving- the cause of justice as between litigants, [Rule 4:42-ll(b) (authorizing prejudg-ment interest in tort actions) ] has the equally important objective of expediting the disposition of cases, thereby to advance the welfare of all litigants and the welfare of the taxpayers who must support the system____ The rule concerns the practice and procedure in the courts in any view of that subject notwithstanding that the rule has álso a “substantive” impact upon the dollar result.
[Id. at 371, 307 A.2d 571.]
Rule 8:7(e) can be similarly described. By requiring that a Chapter 91 motion be filed within the earlier of 180 days after the filing of the appeal or thirty days before the trial date, the rule permits early disposition of the appeal thereby enabling both parties to avoid unnecessary investments of time and expense, including the.expense of appraisal reports, and enabling the court to avoid unnecessary expenditure of its time and resources. The effect of R. 8:7(e) is as salutary with respect- to the orderly and expeditious processing and disposition of litigation as the effect of the rule imposing a forty-five day time limit for appeal sustained in Winberry v. Salisbury, and the effect of the rule authorizing prejudgment interest sustained in Busik v. Levine.
Defendant’s contention that R. 8:7(c) is invalid because Chapter 91 relates to the Tax Court’s subject matter jurisdiction, and the Rule improperly limits the time period for objections to such jurisdiction, is unpersuasive for two reasons. First, Chapter 91 does not relate to the Tax Court’s subject matter jurisdiction. Secondly, even if the statute governed subject, matter jurisdiction, *111 the Supreme Court may, by court rule, limit the time period for objections to such jurisdiction.
The issue of whether a court has subject matter jurisdiction “involves merely a threshold determination as to whether the court is legally authorized to decide the question presented.” Gilbert v. Gladden, 87 N.J. 275, 280-81, 432 A.2d 1351 (1981). Under the provisions of N.J.S.A. 2B:13-2 the Tax Court is “legally authorized” to decide the questions presented in this appeal. See also R. 8:2. Because the right to appeal a local property tax assessment is a statutorily conferred right, even though having constitutional origins, strict compliance with the requirements of the applicable statutes is necessary in order to prosecute such an appeal. Every failure of compliance, however, does not necessarily relate to subject matter jurisdiction.
We begin with the premise that “[t]he right of appeal to the Division of Tax Appeals is purely statutory and the appellant is required to comply with all applicable statutory requirements.” It does not follow, however, that every procedural omission rises to the level of a fatal defect in subject matter jurisdiction regardless of the attendant circumstances so as to deprive the taxpayer of any opportunity for review or to render void any ensuing judgment.
[General Trading Co. v. Director, Div. of Taxation, 83 N.J 122, 127-28, 116 A.2d 37 (1980). (citations omitted)]
The distinction between a lack of subject matter jurisdiction and other types of jurisdictional defects is discussed at length in Farrell v. Atlantic, 10 N.J.Tax 336, 342-47 (Tax 1989), where Judge Rimm determined that a failure to pay taxes in accordance with the requirements of N.J.SA. 54:51A-1 did not deprive the Tax Court of subject matter jurisdiction but merely precluded the court from exercising jurisdiction over the matter before it. Id. at 344. See also Joseph L. Muscarelle Dev. Co. v. Manalapan Tp., 13 N.J.Tax 330, 334-35 aff’d, (Tax 1993), 15 N.J.Tax 164 (App.Div.1994) (discussing the “jurisdictional” nature of a failure to pay taxes under N.J.S.A. 54:3-27).
That Chapter 91 and, R. 8:7(e) do not relate to subject matter jurisdiction is demonstrated by the impact of a failure to comply with the requirements of the statute. A failure to respond to an assessor’s request for information does not require a dis *112 missal of an appeal but only a limitation on the scope of the hearing to be held before the Tax Court.
The taxpayer’s failure to provide the requested financial information in a timely fashion will preclude the use of those data on appeal. The inquiry will focus solely on whether the valuation could reasonably have been arrived at in light of the data available to the assessor at the time of the valuation. Encompassed within this inquiry are (1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation.
[Ocean Pines. Ltd. v. Point Pleasant Bor., 112 N.J. 1, 11, 547 A.2d 691 (1988).]
Accordingly, if the Tax Court determines that relief under Chapter 91 should be granted by reason of a failure to respond to an assessor’s request, the court continues to have jurisdiction to hear the matter, but only on a limited basis. Neither the statute nor R . 8:7(e), therefore, deprives the court of subject matter jurisdiction. As a result, the time limitations imposed by R. 8:7(e) do not conflict with the general principle that objections to subject matter jurisdiction may be raised at any time. This principle is reflected in R. 4:6-7 which provides in relevant part: ‘Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the matter except as otherwise provided by R. 1:13-4.”
Even if N.J.S.A. 54:4-34 did relate to the Tax Court’s subject matter jurisdiction, a court rule limiting the time period within which an objection to such jurisdiction may be raised would not constitute a rule of substance within the meaning of Winberry v. Salisbury, supra, 5 N.J. 240, 74 A.2d 406, and the other authorities discussed above.
Under generally prevailing procedural rules, the question of a court’s subject matter jurisdiction may be raised at any time before the judgment has become final____
In this respect the question of subject matter jurisdiction is very different from the question of territorial jurisdiction or one of regularity of notice. This difference has been explained by the fact that an objection to subject matter jurisdiction is in some sense more fundamental than objections to territorial jurisdiction or notice, in that a court is powerless to decide a controversy with respect to which it lacks subject matter jurisdiction. But such an analysis would require that a court’s decision as to its own subject matter jurisdiction could not be accorded conclusive effect, contrary to the established rule in that regard____
A more satisfactory analysis of the treatment of the objections to subject matter jurisdiction is simply historical. The proposition that the subject matter jurisdic *113 tion of a court could be questioned in an attack after judgment originally found expression in the English common law courts in cases dealing with judgments of courts of limited jurisdiction. It was reinvigorated in early decisions of our federal courts in the course of cases involving their own jurisdiction, which was then new and regarded with some hostility. In these contexts, the interest of securing rigorous adherence to jurisdictional limitations was a strongly predominant policy consideration. It was one that therefore could appropriately be given precedence over the interest of fairness that would otherwise dictate that a challenge to subject matter jurisdiction ought to be unavailable unless raised before trial on the merits. In modern context, the relative weight of these interests has shifted. It may well be that procedural rules of the future will be reformulated to require that objections to subject matter jurisdiction be raised before trial on the merits, thus expressing a policy approaching that now applied to objections to territorial jurisdiction. However, except for the rules governing exti'aordinary relief from a judgment that has become final .. the question of time limitations within which a challenge to competency may be made is one of procedure and beyond the scope of this Restatement.
[.Restatement (Second) of Judgments, § 11 cmt. d (1980) (emphasis supplied) (citations omitted).]
Since the time limit for raising objections to subject matter jurisdiction is procedural, it follows that R. 8:7(e) is a rule of procedure even if it is deemed to relate to subject matter jurisdiction. The rule, therefore, was validly adopted by the Supreme Court pursuant to its rule-making power.
In summary, I conclude that R. 8:7(e) is valid as a rule of procedure not substance. The rule does not relate to the subject matter jurisdiction of the Tax Court, and, even if it did, the rule would constitute a valid rule of procedure.
II.
Retrospective Application of R. 8:7(e).
I now turn to the issue of whether R. 8:7(e) should be applied retrospectively to appeals pending as of its effective date. The law is well established that a procedural court rule is “in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter.” Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120, 299 A.2d 394 (1973) (citations omitted). See also Simons v. Saaz, 147 N.J.Super. 143, 145, 870 A.2d 889 (App.Div.1977). Rule 8:7(e) is a rule of procedure, and, therefore, applies retrospectively to this action which *114 was pending as of the September 1, 1998 effective date of the Rule.
III.
Relaxation of The Rule.
Remaining for determination is whether I should relax the time limit of R. 8:7(e) where defendant filed its motion under Chapter 91 more than four months after the effective date of rule, more than nine months after the filing of plaintiffs complaint, and more than three months after the expiration of the time limit established by the rule. Relaxation of a rule is appropriate under. R. 1:1-2 if adherence' to the rule “would result in an injustice.” Here, municipalities, tax assessors, and then attorneys were chargeable with notice of R. 8:7(e) no later than September 1,1998 when the rule became effective. That date was the one hundred fifty-third day after the April 1, 1998' filing date of plaintiffs Complaint. Twenty-seven days remained, therefore, during which defendant could have filed its motion in compliance with the rule. In deciding whether to relax the rule’s time limit, I am cognizant that a reasonable time should be allowed, after the effective date of the rule: (a) for defendant’s assessor to cheek his records to identify the property owners who failed to respond in a timely fashion to Chapter 91 requests and communicate that information to the municipal attorney, and (b) for the municipal attorney to prepare and file motions seeking relief under Chapter 91. Defendant has not provided any explanation as to why these procedures required more than four months after September 1, 1998 for completion, or as to why the procedures could not have been completed sooner. On their face, the procedures do not appear to be complicated or unduly time-consuming. From defendant’s failure to provide an explanation for the delay in filing its motion, I infer that defendant has no satisfactory explanation. Refusal to relax R. 8:7(e) under these circumstances will not result in an injustice, and, therefore, I will not relax the rule.
Based upon the foregoing determinations, I deny the defendant’s motion for relief under N.J.S.A. 54:4-34. As a result of *115 such denial, I need not address other issues raised by plaintiff in response to the motion. However, because those issues may arise again, I will address them briefly.
Plaintiff argues that the municipality may not proceed with a Chapter 91 motion so long as it maintains its counterclaim. The theory of this ai'gument is that, if the municipality is successful on the Chapter 91 motion, and proceeds with its counterclaim, the court will be required to hear the matter on the merits and make a decision as to value as if no Chapter 91 motion had been filed. Plaintiff relies on East Orange v. Lismarc Realty Management Corp., 7 N.J.Tax 469 (Tax 1985), for the proposition that, as a condition precedent to filing a Chapter 91 motion, the municipality must elect to withdraw its counterclaim. I reject plaintiffs argument for the following reasons.
No rule or statute in any way suggests, no less provides, that a municipality may move for relief under Chapter 91 only if it is not otherwise seeking an adjustment in the assessment. East Orange v. Lismarc Realty Management Corp. recognizes that either a claim or counterclaim may necessitate a trial on the merits, but does not address the issue raised by plaintiff. Under plaintiffs position, the municipality would be required to withdraw its counterclaim and then proceed on its motion under Chapter 91. If the municipality, after withdrawing its counterclaim, were unsuccessful on its motion, it would be deprived of its claim for increase in the assessment if the taxpayer thereafter withdrew its complaint pursuant to R. 8:3-9. Such a result would be unfair and unjust.
Plaintiff also contends that the mere filing of a counterclaim is an admission by the municipality that the assessment is unreasonable, thereby precluding the municipality from limiting plaintiff to a reasonableness hearing as contemplated by Ocean Pines Ltd. v. Point Pleasant Bor., supra, 112 N.J. 1, 547 A.2d 691. Plaintiff ignores the language in Ocean Pines which requires that the reasonableness of the assessment be determined “in light of the data available to the assessor at the time of the valuation.” *116 Id. at 11, 547 A.2d 691. Accordingly, an assessment may be “reasonable” based upon the information available to the assessor, but a counterclaim may be warranted on the basis that the assessment does not accurately reflect fair market value. The counterclaim, therefore, does not imply that the assessment is unreasonable under the Ocean Pines standard. Furthermore, even an assessment which is “reasonable” may be subject to increase because, although reasonable, the assessment is incorrect.
Neither N.J.S.A. 54:4-34, R. 8.7(e), nor any other statute, court rule, or court decision, nor logic, supports the plaintiffs contentions, and I reject them.
Finally, plaintiff argues that, if defendant’s Chapter 91 motion is granted without requiring defendant to withdraw its counterclaim, plaintiff should be permitted to file a counterclaim to the counterclaim. I reject this argument because to accept the ai’gument would be to permit a total circumvention of Chapter 91.